UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JUN 29 2018
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

AMANDA MONTOYA, *et al.* §
§
PLAINTIFFS, §
§
v. § No. 16-CV-00005 (RCL)
§
STATE FARM MUTUAL AUTOMOBILE §
INSURANCE CO. §
§
DEFENDANT. §

## Memorandum Opinion

Before the Court is the plaintiffs' Motion to Clarify Order and to Reconsider Memorandum Opinion. ECF No. 22. The Court also has the plaintiffs' Motion for Leave to File an Amended Complaint. ECF No. 25. Upon consideration, the Court will grant the motion to clarify its earlier order [ECF No. 21], deny the motion to reconsider its earlier memorandum opinion, and deny the motion for leave to file an amended complaint.

### Background

The plaintiffs, the Montoyas, were injured in an automobile accident. The driver of the other vehicle, Andrew Acosta, who was allegedly intoxicated at the time, died in the crash. Acosta was insured by the defendant, State Farm. Acosta's policy had a $25,000 per person and $50,000 per occurrence limit. State Farm settled the claims of all victims except for the Montoyas':

- Kristofer Ramirez—$25,000. Ramirez was a passenger in Acosta's vehicle and allegedly provided Acosta with alcohol;

- Victim 1—$6,530. This victim plays no further role in this litigation.

- Victim 2—$3,545. This victim plays no further role in this litigation.

1

State Farm offered $14,925 to the Montoyas to settle their claims, but the Montoyas refused that offer.

The Montoyas then sued Acosta's estate. They were awarded a judgment of $542,933.67. After receiving this judgment, the Montoyas entered a covenant not to execute on that judgment with the Acosta estate. In return, Acosta's estate assigned to the Montoyas its rights against State Farm for any claims arising out of State Farm's handling of the accident.

The Montoyas then sued State Farm. In their complaint, they alleged the following causes of action, each of which was set out under a dedicated heading: (1) Breach of Contract, (2) Breach of the Duty of Good Faith and Fair Dealing, (3) Insurance Code Violations, and (4) Deceptive Practices. According to the Montoyas, their complaint also alleges a *Stowers* claim. This is contested. The complaint never contains the word *Stowers*. And while every other claim asserted in the complaint has a dedicated heading, there is no such heading for a *Stowers* cause of action. And the Court found in its previous opinion that the facts alleged in the complaint were insufficient to state a *Stowers* claim implicitly. ECF No. 20.

State Farm moved for judgment on the pleadings, seeking to dismiss all of these claims except for the breach-of-contract claim. The Court granted State Farm's motion. ECF Nos. 20, 21.

### The Montoyas' Motion to Clarify

The Montoyas request "that the Court clarify its order with regard to the status of their *Stowers* claim." In its order, the Court described the Montoyas' breach of contract as the "final remaining claim." ECF No. 21. The Montoyas ask whether their *Stowers* claims can be raised in connection with their breach-of-contract claim. The answer is no. A *Stowers* claim is not a contractual claim. Rather, a *Stowers* claim arises from "the only common law tort duty in the

context of third party insurers responding to settlement demands." *Mid-Continent Ins. Co. v. Liberty Mut. Ins.*, 236 S.W.3d 765, 776 (Tex. 2007). So the Montoyas' *Stowers* claim (assuming one was even alleged) cannot be raised in connection with the breach-of-contract claim. The only claim remaining from the original complaint, without exception or caveat, is the breach of contract claim.

### The Montoyas' Motion to Reconsider

In its previous memorandum opinion [ECF No. 20], the Court concluded that the Montoyas' complaint failed to allege a *Stowers* claim. The Court provided three reasons for why this was so. First, the complaint never explicitly stated a *Stowers* claim, despite it being a widely known doctrine of Texas insurance law. Second, the Texas Supreme Court has held that a *Stowers* claim is not a bad faith claim. So to the extent that the Montoyas attempted to incorporate a *Stowers* claim into their good faith and fair dealing claim, that attempt failed. And third, the complaint never alleged facts showing that the *Stowers* duty even existed here. Specifically, the plaintiffs never alleged that they made a formal *Stowers* demand, which the Court said was a necessary prerequisite to any *Stowers* claim.

The Montoyas now ask the Court to reconsider its conclusion that they were required to make a formal *Stowers* demand before they could make their claim.[1] The Court will first outline the Montoyas' argument. The Court will then show why the Montoyas' alleged *Stowers* claim would still fail even if that argument were correct.

---

[1] The Montoyas' motion to reconsider does not directly address the Court's other two grounds for dismissing any *Stowers* claim based on the pleadings. But the Court will still address the Montoyas' actual arguments out of an abundance of caution.

## I. The Montoyas' Argument—The *Soriano* Case

The Montoyas' argument for reconsideration is based on a Texas Supreme Court case, *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312 (Tex. 1994). That case was very similar to this case. It involved a car accident in which the driver at fault, Soriano, had insufficient insurance to cover all of the claims against him. *Id.* at 313–14. The insurer, Farmers, settled one claim, the Lopez claim, for $5,000. *Id.* at 313. This left insufficient funds with which to settle the claims of the remaining defendants, the Medinas. *Id.* The Medinas obtained a substantial civil judgment against Soriano, but covenanted not to execute the judgment in exchange for Soriano's claims against Farmers. *Id.* at 314.

The Medinas sued Farmers, alleging in part that settling the Lopez claim was unreasonable in light of the more serious Medina claims, which could have been settled for the policy limits. *Id.* at 313–14. This unreasonable settlement exposed Soriano to an excess judgment. *Id.* at 314. The Medinas argued that Farmers, being faced with multiple claims and inadequate proceeds, ought to have weighed the relative seriousness of the claims before it and prioritized those claims posing the greatest threat of liability for excess judgments. *Id.*

The Medinas' arguments prevailed at trial and in the first appeal of that judgment. *Id.* But the Supreme Court of Texas reversed. *Id.* at 318. That court first stated that when there is only a single claim, the *Stowers* duty is not activated unless three prerequisites are met: "(1) the claim against the insured is within the scope of coverage, (2) there is a demand within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Id.* at 314. These prerequisites, that court said, applied with equal force to the case before it, in which there were multiple claims that overwhelmed the available insurance funds. *Id.* at 315.

4

Having said that, the Court then explained that there were two theories under which the Montoyas could proceed to show that Farmers was liable for negligent failure to settle their claim: (1) the Medinas could show that "Farmers negligently rejected a demand from the Medinas within the policy limits," or (2) the Medinas could show that "the Lopez settlement was itself unreasonable." *Id.*

In its earlier opinion, the Court took the Supreme Court of Texas at its word when it said that a *Stowers* demand within policy limits was a necessary prerequisite to the existence of a *Stowers* duty. And the Montoyas made no *Stowers* demand. Therefore, it did not matter what theory of negligent settlement the Montoyas put forward. Under either theory, they did not satisfy the prerequisite for bringing the claim itself—a *Stowers* demand of their own.

The Montoyas argue that the Court misinterprets *Soriano*. According to the Montoyas, a *Stowers* demand is only a prerequisite to arguing the first theory of liability given by the Supreme Court of Texas. They argue that they are not required to make a *Stowers* demand of their own to make an argument of the second theory of liability, i.e., that State Farm's settlement with Ramirez was itself unreasonable.

The Court will reject the Montoyas' motion to reconsider on two grounds. First, the Court disagrees with the Montoyas' argument that it did not need to make a *Stowers* demand of its own in order to argue that State Farm's settlement with Ramirez was unreasonable. In *Soriano*, the Supreme Court of Texas called such a *Stowers* demand a prerequisite to any *Stowers* claim. The Court will not now go into greater detail on this ground—its earlier opinion adequately explains the position.

Second, even if the Court is wrong, and the Montoyas do not need to have made a *Stowers* demand of their own in order to argue that the Ramirez settlement was itself unreasonable,

5

the Montoyas have alleged insufficient facts to conclude, as a matter of law, that the Ramirez settlement was unreasonable.

### II. In this Case, the Montoyas Allege No Facts Showing that the Ramirez Settlement Was Unreasonable.

Suppose the Court errs when it says that the Montoyas need to make a *Stowers* demand before they may bring a *Stowers* claim under *Soriano's* second theory of liability. Even in that case, the Montoyas' *Stowers* claim fails because the facts they allege are legally insufficient to show that State Farm's settlement with Kristofer Ramirez was unreasonable.

As an initial matter, the Court addresses the Montoyas' assertion that "the Court must assume that State Farm acted unreasonably in settling the Ramirez claim for policy limits" for purposes of a 12(c) motion and reconsideration of a 12(c) motion. ECF No. 22 at 7. Not so. The Court must accept the Montoyas' factual allegations as true. And the Court must draw any reasonable inferences from those facts in the light most favorable to the Montoyas. But the reasonableness of an action is not a fact of this sort. Courts may conclude that an action is reasonable as a matter of law, even when accepting all of a plaintiff's factual allegations as true and viewing those facts in the light most favorable to the plaintiff. So, for purposes of this motion, the Court will accept as true the Montoyas' allegations that State Farm settled the Ramirez claim for policy limits, that Ramirez provided alcohol to Acosta and was partially responsible for the accident, and that Ramirez's injuries were less serious than the Montoyas' injuries. But the Court will not simply accept the assertion that State Farm's actions were unreasonable if, as a matter of law, there are insufficient facts alleged to support that conclusion.

The following excerpt from the complaint contains the Montoyas' rationale for why they think the Ramirez settlement was unreasonable:

> [D]espite having agreed to discuss and arrive at, with the assistance and the direction of the Court, an equitable apportionment of the

6

> insurance proceeds, State Farm . . . proceeded with finalizing settlements without the knowledge of, and to the detriment of the Plaintiffs. Said settlements included paying policy limits to the estate of one of the other passengers who was actually responsible for providing alcohol to the driver, Andrew Acosta. Such settlements were unfair, unreasonable, and unfounded. State Farm's actions in settling with culpable and less injured claimants also left [the insured] unreasonably exposed for a judgment above and beyond the policy limits.

Pl. Orig. Pet. at 3, ¶9; ECF No. 1-1 at 6. The Montoyas explained their reasoning again in their motion for reconsideration:

> Ramirez had purchased the alcoholic beverages that the driver Acosta had consumed, resulting in his intoxication at the time of the accident, and therefore was contributorily negligent for the accident. Since Ramirez bore significant responsibility for the accident, State Farm had acted unreasonably when it settled the Ramirez claim for policy limits, thereby leaving insufficient funds for the remaining claimants and exposing its insured to an excess judgment.

ECF No. 22 at 2 (internal citations omitted). Put simply, the Montoyas argue that State Farm's settlement was unreasonable because Ramirez was contributorily negligent and less seriously injured than the Montoyas. And this unreasonable settlement left insufficient funds to settle more serious and meritorious claims, such as the Montoyas', and exposed Acosta to the risk of a surplus judgment.

But the Montoyas' reasoning is the exact sort of comparative analysis that the Supreme Court of Texas rejected in *Soriano*. The following passage from *Soriano* illustrates this:

> Nor is there any evidence that the Lopez settlement was itself unreasonable. It is undisputed that the Lopez claim . . . had merit. Soriano contends only that the Lopez settlement was unreasonable when viewed in comparison to the more serious Medina claims. The fact that the Medinas' claims may be more serious is not evidence that the Lopez claim was unreasonable. To be unreasonable, Soriano must show that a reasonably prudent insurer would not have settled the Lopez claim *when considering solely the merits of the Lopez claim and the potential liability of its insured on the claim.*

7

> This standard is nothing more than what is required of an insurer under *Stowers*.

*Soriano*, 881 S.W.2d at 316 (emphasis added). That court went on to find that there was no evidence that the Lopez settlement, viewed on its own, was unreasonable.

From this section, the Court sees the following steps in the Supreme Court of Texas's reasoning. First, it concluded that the Lopez claim had merit. Second, it found that Soriano's arguments rested on comparisons of the Lopez and Medina claims and rejected those arguments. Third, the Court found that there was no evidence showing that the Lopez settlement was unreasonable when viewed in isolation. This reasoning applies perfectly to this case if one replaces the names "Lopez," "Soriano," and "Medina" with "Ramirez," "Acosta," and "Montoya."

First, like the Lopez claim in *Soriano*, the Ramirez claim here had merit. There is no contention that Ramirez was not injured at all in the accident, only that he was less injured than the Montoyas. And there is no contention that Ramirez's claim against Acosta was legally meritless, only that he was contributorily negligent. But though Ramirez was contributorily negligent, contributory negligence is not an automatic bar to recovery under Texas law unless the person is primarily at fault for the accident. *See* TEX. CIV. PRAC. & REM. CODE §§ 33.001 ("In an action to which this chapter applies, a claimant may not recover damages if his percentage of responsibility is greater than 50%."). Here, there is no contention that Ramirez's was primarily responsible for the accident. Under the facts alleged, then, Ramirez still could have sued Acosta for the injuries he sustained in the accident. And Ramirez could have received damages—significant damages, perhaps—from Acosta for those injuries. Therefore, Ramirez's claim had merit.

Second, like Soriano's argument in Soriano, the Montoyas' arguments here rest on comparisons of the Montoyas' and Ramirez's claims. Soriano contended that the Lopez settlement

was unreasonable only when compared to the Medina claims. The Montoyas contend that the Ramirez settlement is unreasonable only when compared to the Montoyas' own claims.

In *Soriano*, the comparison involved the relative seriousness of the claims. The Medina claims were more serious than the Lopez claims. Therefore, it was argued, it was unreasonable to settle with Lopez in a way that reduced the available funds with which to settle the more serious Medina claims. *Soriano*, 881 S.W.2d at 316. Here, the comparison involves the relative merits and the seriousness of the claims. The Montoyas' allege that their injuries are more serious than Ramirez's and that their claims are more meritorious than Ramirez's claim because of Ramirez's contributory negligence. Therefore, they argue, it was unreasonable for State Farm to settle with Ramirez in a way that reduced the available funds with which to settle the more deserving and more serious Montoya claims.

In *Soriano*, the Supreme Court of Texas rejected these comparative lines of reasoning. *Id.* ("The fact that the Medinas' claims may be more serious is not evidence that the Lopez claim was unreasonable."). It did so because the reasonableness of a settlement is not determined in relation to other claims, but rather on the individual merits of the claim settled. In *Soriano*, this meant that, "[t]o be unreasonable, Soriano [had to] show that a reasonably prudent insurer would not have settled the Lopez claim when considering solely the merits of the Lopez claim and the potential liability of its insured on that claim." *Id.* Comparisons of the relative value of respective claims was impermissible.

The same holds true here. To show that State Farm's settlement with Ramirez was unreasonable, the Montoyas' have to show that a reasonably prudent insurer, considering solely the merits of the Ramirez claim and the value of that claim, would not have settled the Ramirez claim. But the Montoyas attempt to show unreasonableness by comparing the relative value of

9

their claims compared to Ramirez's claim. Just like Soriano, the Montoyas allege that their injuries were more serious than those of the claimant who received a settlement. Such comparisons cannot form the basis of a finding of unreasonableness on the part of a settling insurer.

The Montoyas' allegations of contributory negligence on the part of Ramirez do not change this analysis. As the Court explained earlier, Ramirez's contributory negligence would not bar any recovery from Acosta, but would merely reduce that recovery. In other words, Ramirez's contributory negligence goes to the value of his claim. That being the case, it is not enough to say that Ramirez was contributorily negligent and the Montoyas were not. This is just another way of saying that the Montoyas' claims could be worth more than Ramirez's claim, because the value of Ramirez's claim could be reduced on account of his own negligence. And *Soriano* rejected the use of such comparative techniques when assessing the reasonableness of a settlement.

Third, the Montoyas allege no facts that, even when taken as true, permit a reasonable inference that the Ramirez settlement, viewed in isolation, was unreasonable. The Montoyas do not allege that the Ramirez claim was not *really* worth $25,000 or more. They do not provide any estimate of the *actual* value of his claim, with or without taking contributory negligence into account. The Montoyas only allege that Ramirez was contributorily negligent and that settling his claim for policy limits was therefore unreasonable. But that is a non-sequitur. There is no bar on settling with contributorily negligent persons for policy limits. And the Montoyas allege no facts from which the Court can draw a reasonable conclusion that the value of Ramirez's claim was such that State Farm's decision to settle his claim for $25,000 was unreasonable.

The Court also notes that the Montoyas never made a *Stowers* demand. While the Court premises its analysis on the presumption that a *Stowers* demand is not a necessary prerequisite to challenging the reasonableness of the Ramirez settlement, the absence of a *Stowers* demand is

relevant to the analysis. Absent a *Stowers* demand, State Farm could not know whether the Montoyas would be willing to settle within policy limits at all. State Farm was not required to sideline other claimants it knew were willing to settle on the off chance that a larger claimant would later prove willing to settle. Indeed, had State Farm "opted not to settle the [Ramirez] claim" on the hope that the Montoyas would later prove willing to settle within policy limits, "[State Farm] would surely [have] face[d] questions about liability under *Stowers* for failing to settle the [Ramirez] claim. To be sure, in settling the [Ramirez] claim, [State Farm] necessarily reduced the amount of insurance available to satisfy the [Montoyas'] claims, but [State Farm] also reduced [Acosta's] liability exposure." *Soriano*, 881 S.W.2d at 315. Such concerns led the Supreme Court of Texas to conclude that "an insurer may enter into a reasonable settlement with one of several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." *Id.* This approach furthers the Texan policy of "promot[ing] settlement of lawsuits and encourage[ing] claimants to make their claims promptly." *Id.* As such, even if a *Stowers* demand is not a necessary prerequisite of challenging the reasonableness of an insurer's settlement with another claimant, the absence of a *Stowers* demand makes challenging the reasonableness of such a settlement more difficult.

The Montoyas have alleged no facts from which the Court can draw a reasonable inference that the Ramirez settlement was unreasonable. Therefore, the Court will not reconsider its earlier memorandum opinion and order. The only surviving claim from the original complaint is the breach-of-contract claim.

### The Montoyas' Motion for Leave to File an Amended Complaint

The Montoyas request leave to file an amended complaint. ECF No. 25. Pursuant to Local Rule CV-7, they include with their motion a copy of the proposed amended complaint. ECF

11

No. 25-1. The proposed amended complaint omits the causes of action that the Court explicitly dismissed in its order on State Farm's motion to strike. It also adds an explicit *Stowers* claim. *Id.* at 5. The Court will deny leave to file the amended complaint for futility.

The *Stowers* claim asserted in the proposed amended complaint, though explicit, still alleges insufficient facts as a matter of law to assert a viable claim. It suffers from the same defects discussed above in relation to the original complaint. The complaint still alleges that the Ramirez settlement was unreasonable because Ramirez was contributorily negligent. *Id.* at 5. The only thing the amended complaint arguably adds is the contention that State Farm did not obtain a release from the remaining claimants before settling with Ramirez. But again, this attempts to show the reasonableness of a settlement with reference to factors external to the merits of the claim being settled and the potential liability of the insured on that claim. As the Court explained above, the Supreme Court of Texas rejected this approach to reasonableness analyses in the *Stowers* context. *See Soriano*, 881 S.W.2d at 316. The analysis must confine itself "solely" to "the merits of [the individual] claim and the potential liability of [the] insured on the claim." *Id.* The presence or absence of releases from other claimants does not fit within those confines.

A requirement that an insurer obtain releases from other claimants before settling with a particular claimant would also undermine the purpose behind allowing such settlements in the first place. That purpose is to "promote[] settlement of lawsuits and encourage[] claimants to make their claims promptly." *Id.* at 315. But the requirement proposed by the Montoyas would discourage settlement because it seemingly would subject all offers—even *Stowers* demands—to the approval of other claimants. The requirement would also discourage claimants from making their claims promptly, because they would know that insurers would have to reach out to them for releases before approving other settlements, thus removing the incentive to assert claims before

the insurer has the opportunity to settle and exhaust the policy. For all of these reasons, the allegation that State Farm did not obtain releases from other claimants before settling with Ramirez cannot be a factor in the reasonableness analysis.

The final allegation asserted by the Montoyas in their amended complaint is the following: "A reasonably prudent insurer would not have settled the Ramirez claim when considering solely the merits of the claim and the potential liability of its insured on the claim." ECF No. 25-1 at 5. This is a bald-faced, conclusory statement. It is nothing more than a restatement of the legal standard from *Soriano*. *Soriano*, 881 S.W.2d at 316. Mere restatements of legal standards do not qualify as factual allegations that may sustain a cause of action.

In sum, the amended complaint alleges (1) that Ramirez was partly at fault for the accident, (2) that State Farm did not obtain releases from other claimants before settling with Ramirez, and (3) that a reasonably prudent insurer would not have acted as State Farm did. The first statement utilizes comparative analysis rejected by the Supreme Court of Texas in *Soriano*. The second asserts a fact that cannot legitimately be considered in the reasonableness analysis. And the third is not an allegation of fact at all, but a conclusory allegation that recites a legal standard. That being the case, the Montoyas have alleged no facts with which to sustain a *Stowers* claim. Therefore, the proposed amendment is futile and the Court will deny leave to file it.

## Conclusion

For the reasons given above, the Court will grant in part and deny in part the plaintiffs' Motion to Clarify Order and to Reconsider Memorandum Opinion. Specifically, the Court will grant the motion to clarify its earlier order, but deny the motion to reconsider its earlier opinion. Even if the plaintiffs are correct that a *Stowers* demand of their own is not a necessary prerequisite

to bringing a claim under *Soriano*, they fail, as a matter of law, to allege sufficient facts from which to conclude that State Farm's settlement with Ramirez was unreasonable.

The Court also will deny the plaintiffs' Motion for Leave to File an Amended Complaint because the amendment would be futile.

A separate order shall issue this date.

Signed: June 29, 2018.

HONORABLE ROYCE LAMBERTH
UNITED STATES DISTRICT JUDGE